IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| GE HEALTHCARE BIO-SCIENCES AB, GE HEALTHCARE BIO-SCIENCES CORPORATION, and GENERAL ELECTRIC COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>BIO-RAD LABORATORIES, INC.,<br><br>Defendant. | C.A. No. 19-943-CFC<br><br>**JURY TRIAL DEMANDED** |

## SECOND AMENDED COMPLAINT

Plaintiffs GE Healthcare Bio-Sciences AB, GE Healthcare Bio-Sciences Corporation, and General Electric Company (together, "GE"), by their attorneys, bring this civil action for patent infringement against Defendant Bio-Rad Laboratories, Inc. ("Bio-Rad"), and allege as follows:

## NATURE OF THE ACTION

1.    GE brings this action to seek damages and injunctive relief arising out of the infringement by Bio-Rad of U.S. Patent No. RE47,124 (the "'124 patent," attached hereto as Exhibit A), entitled "Automated Fluid Handling System" ("the Patent-In-Suit").[1]

## PARTIES

2.    Plaintiff GE Healthcare Bio-Sciences AB ("Bio-Sciences AB") is a Swedish company, based in Uppsala Sweden, and is a subsidiary of Plaintiff General Electric Company.

---

[1] The '124 patent is a reissued patent of US Patent No. 8,827,718 ("the '718 patent"), which was previously asserted in the original Complaint (D.I. 1) and the First Amended Complaint (D.I. 72).

3. Plaintiff GE Healthcare Bio-Sciences Corporation ("Bio-Sciences Corp.") is a Delaware corporation, with a principal place of business in New Jersey, and is a subsidiary of Plaintiff General Electric Company.

4. Plaintiff General Electric Company is a New York corporation, with a principal place of business at 3135 Easton Turnpike, Fairfield, Connecticut 06828, and controls and is the ultimate parent company of Bio-Sciences AB and Bio-Sciences Corp.

5. Bio-Sciences AB is the assignee and owner of the '124 patent. On September 2, 2014, Bio-Sciences AB granted Bio-Sciences Corp. a royalty-free exclusive license to sell products in the United States under the '124 patent.

6. Defendant Bio-Rad is a publicly-traded corporation incorporated under Delaware law, with a principal place of business located at 1000 Alfred Nobel Drive, Hercules, California.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over GE's claims under 28 U.S.C. §§ 1331 and 1338(a) because the claims arise under the United States Patent Laws, 35 U.S.C. § 1 *et seq*.

8. This Court has both general and specific personal jurisdiction over Bio-Rad because Bio-Rad has committed one or more acts of patent infringement complained of herein in the District of Delaware. Bio-Rad further has been incorporated under the laws of Delaware since 1975 and regularly does or solicits business in this District.

9. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) and 1400(b) because Bio-Rad is incorporated in Delaware and thus resides in the State. In addition, Bio-Rad has frequently availed itself of the District of Delaware by filing patent infringement actions in this District.

## BACKGROUND

10.     Plaintiff Bio-Sciences AB is a leading developer, manufacturer, and supplier of biopharmaceutical manufacturing technologies dedicated to helping customers deliver better healthcare to people around the world.  It provides expertise and tools to support research of cells, proteins and drug discovery, and equipment to support large-scale manufacturing of biopharmaceuticals.  One important line of products developed by Bio-Sciences AB is its protein purification systems, including products marketed and sold under the trade name ÄKTA™.

11.     Protein purification is an important aspect of biopharmaceutical research and manufacturing.  Purification is a series of processes intended to isolate a single or small number of proteins from a complex mixture, which is essential for the characterization of the function, structure, and interactions of proteins of interest.  Protein purification can be roughly divided into an analytical and preparative method:  the analytical method aims to detect and identify proteins in a mixture, while the preparative method aims to produce large quantities of proteins for purposes such as industrial use and typically involves chromatography.

12.     Bio-Sciences AB has been developing, manufacturing and selling innovative protein purification-related technologies since the 1950s.

13.     Beginning in or about 2003, Bio-Sciences AB began developing a modular design for protein purification systems to enable researchers to more quickly, easily, and cost-effectively purify proteins.  This modular design provides a system that not only simplifies researchers' work, but also gives researchers a flexible option for expanding and tailoring their purification capabilities as the research progresses.

14.     Bio-Sciences AB's modular protein purification systems include its ÄKTA systems, which offer a range of chromatography systems for fast purification of proteins and

other molecules from microgram to kilogram levels of target product. The ÄKTA pure, ÄKTA avant, and ÄKTA pilot600 systems, for example, include a distinctive modular system design that offers a large range of options to allow flexibility in purification of proteins. The ÄKTA pure system, for example, is customizable, meaning it can be easily tailored to the researcher's precise needs through a broad selection of hardware options from valves and tubing to monitors and fraction collectors. Among other things, this system also provides for separation of fluidics sections (external to the housing) from non-fluidics sections (internal to the housing).

15. Bio-Sciences AB's user-friendly modular protein purification systems were groundbreaking when they were first introduced, and have been greeted with considerable praise. In fact, when the ÄKTA avant system was first launched in 2009, it was the first chromatography system on the market to offer a flexible modular design that included, for example, an attractive panel design separating the fluidics section from the non-fluidics section. Thereafter, Bio-Sciences AB expended considerable effort and expense to further develop the design and launched the ÄKTA pure system in 2012. The year after, the ÄKTA pure system was nominated as the best new separations product introduced on the market in 2012 by SelectScience, an independent, expert-led scientific review resource for the worldwide scientific community. The ÄKTA pilot 600 system was launched in 2017.

16. Bio-Sciences AB develops, manufactures and sells the ÄKTA pure and ÄKTA avant systems. General Electric Company markets and sells the ÄKTA pure, ÄKTA avant, and ÄKTA pilot 600 systems throughout the world, including through its Bio-Sciences Corp. subsidiary in the United States.

**GE's Patents**

17.     Bio-Sciences AB has made significant investments in the research, development, and testing of preparative protein purification systems, including the technology embodied by the ÄKTA protein purification systems.

18.     To protect those investments, Bio-Sciences AB applied for and obtained a number of patents, including the '124 patent.

19.     The '124 patent was duly and legally issued by the United States Patent and Trademark Office ("USPTO") on November 13, 2018 as a reissue of US Patent No. 8,821,718, which was granted on September 2, 2014 to Johan Blomberg and Mats Lundkvist, after full and fair examination, for an "Automated Fluid Handling System."  The '124 patent was originally assigned to Bio-Sciences AB.

20.     The '718 patent issued with claims 1-18.  On September 3, 2015, Bio-Rad filed a petition for *inter partes* review of the '718 patent with the United States Patent Trial and Appeal Board ("the Board").  In its petition, Bio-Rad challenged claims 1-3, 11, 14 and 16-18 of the '718 patent, asserting that these claims were invalid under certain prior art references.  On February 29, 2016, the Board instituted *inter partes* review of claims 1-3 and 5 of the '718 patent, but not on claims 11, 14 and 16-18. On February 6, 2017, the Board issued a final written decision finding that claims 1-3 and 5 were unpatentable.

21.     On January 27, 2016, the reissue application that would result in the issuance of the '124 patent was filed.  During prosecution of the re-issue application that would issue as the '124 patent, claims 1-15 were cancelled and claim 17 was amended.  In addition, the '124 patent issued with new claims 19-44.  Thus, the '124 patent contains claims 16-44.

22. On September 2, 2014, Bio-Sciences AB granted Bio-Sciences Corp. a royalty-free exclusive license to, among other things, use, offer for sale and sell products practicing the '124 patent in the United States.

**Bio-Rad's Infringing Activities Relating to the '124 Patent**

23. In January 2013, Bio-Rad unveiled a suite of protein purification systems, including the Next Generation Chromatography ("NGC") system. Bio-Rad advertised the NGC system as including a modular design that allowed users to customize and modify the system based on their changing needs. In fact, this modular design is copied from the ÄKTA avant system and looks strikingly similar to the ÄKTA pure system. On information and belief, Bio-Rad used GE's ÄKTA system in the design of the NGC system and intentionally designed the NGC to resemble the design of GE's products, particularly the modular features of the ÄKTA avant, ÄKTA pure and ÄKTA pilot 600 systems covered by the '124 patent claims.

24. When Bio-Rad launched the NGC system in 2013, it underscored the value of a modular design, which Bio-Rad advertised allowed for greater flexibility and user-friendliness. Although Bio-Rad emphasized the innovative nature of its modular design, it was well aware that GE had had a modular design for a protein purification system on the market since 2009.

25. Bio-Rad specifically targeted existing and potential ÄKTA customers as part of its campaign to sell its NGC systems.

26. GE notified Bio-Rad by certified letter dated September 2, 2014 that the NGC system potentially infringes claims of the '718 patent, which includes at least claims 16 and 18 of the '124 patent, since neither were amended during prosecution of the re-issue application that would issue as the '124 patent. GE notified Bio-Rad by filing of the Joint Status Report dated

6

December 4, 2018 (D.I. 214) that the previously asserted '718 patent had re-issued as the '124 patent, and that the NGC system potentially infringes claims of the '124 patent.

27. Bio-Rad has infringed and is continuing to infringe the '124 patent by making, using, providing, offering to sell, and selling (directly or through intermediaries) the NGC, in this district and elsewhere in the United States and abroad.

## COUNT ONE

## INFRINGEMENT OF U.S. PATENT NO. RE47,124

28. GE repeats and realleges each and every allegation set forth in the preceding paragraphs as if fully set forth therein.

29. Bio-Rad is presently making, using, offering for sale, and/or selling a system for preparative protein purification (including, without limitation, the NGC system) that infringes one or more claims of the '124 patent, literally or under the doctrine of equivalents.

30. Bio-Rad's systems practice at least one claim of the '124 Patent. An exemplar claim, claim 16, recites:

> A liquid chromatography system arranged to provide a controlled fluid flow through a chromatography column, the system comprising a housing and two or more interchangeable fluid handling units, the housing comprising a liquid handling panel including two or more component positions for receiving said interchangeable units, wherein said units are arranged as interchangeable modular components, and include:
> a fluidics section;
> a non fluidics section in turn comprising electronics or electrical components or control means; and
> a panel member arranged to separate the fluidics section from the non fluidics section and for attachment of the modular component to a component position of the liquid handling panel,
> and wherein the liquid handling panel of the housing and the panel members are arranged such that the fluidics sections are external to the housing and respective non fluidics sections are internal to the housing.

7

31. Bio-Rad's NGC system is an automated liquid chromatography system arranged to provide a controlled fluid flow through a chromatography column that comprises a housing and with a liquid handling panel which has two or more "bays" (i.e., component positions), and at least four "modules" (i.e., interchangeable fluid handling units) that are inserted into the "bays."  *See* Exhibit B (NGC Instrument guide v.6.0) at 19, 22-23, 234-239.  The "modules" (i.e. modular fluid handling units) have fluidics sections that are external to the housing.  *Id*. at 235.  The "modules" (i.e., modular fluid handling units) have non fluidics sections that include electronics or electrical components or control means and are internal to the housing.  A panel member is arranged to separate the fluidics sections from the non fluidics section and for attachment (i.e., fixed in place by a screw) of the module (i.e., the modular component) to a bay (i.e., component position of the liquid handling panel).  *Id.*

32. Such activities by Bio-Rad as described above violate one or more subsections of 35 U.S.C. § 271.

33. Bio-Rad had actual knowledge of claims of the '124 Patent prior to the filing of this Second Amended Complaint. Bio-Rad nevertheless has commenced and/or will commence infringement of at least claim 16 of the '124 Patent and has induced and contributed and/or will induce and contribute to infringement of, at least claim 16 of the '124 Patent.  Bio-Rad's infringement is objectively reckless, knowing deliberate, and willful.

34. Upon information and belief, Bio-Rad knows or is willfully blind to the fact that Bio-Rad's actions have infringed and/or will infringe and have induced and contributed and/or will induce and contribute to infringement of the '124 Patent with the knowledge and intent that one or more claims of the '124 Patent be infringed.

35. Because Bio-Rad infringes claim 16, GE is entitled to compensation for damages GE has incurred due to Bio-Rad's infringement for the time period prior to the issuance of the '124 patent.

36. GE has suffered economic harm as a result of Bio-Rad's infringing activities in an amount to be proven at trial.

37. Bio-Rad's activities have caused and will continue to cause GE irreparable injury for which there is no adequate remedy at law, unless Bio-Rad's infringing activities are enjoined by this Court under 35 U.S.C. § 283.

## DEMAND FOR JURY TRIAL

GE hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, GE respectfully requests that this Court:

1. Enter judgment in favor of GE on each of its claims;

2. Enter judgment against Bio-Rad adjudging the Patent-In-Suit to be valid, enforceable, and infringed;

3. Issue a preliminary and permanent injunction against Bio-Rad for infringement of the Patent-In-Suit;

4. Award GE an amount adequate to compensate for Bio-Rad's infringement of the Patent-In-Suit, including a reasonable royalty and lost profits under 35 U.S.C. § 284, such compensation including but not limited to damages for infringing claims 16 and 18 for infringement prior to the issuance of the '124 patent;

5. Award GE enhanced damages for Bio-Rad's willful infringement of the Patent-in-Suit.

6. Declare that this is an exceptional case under 35 U.S.C. § 285 and award GE its attorneys' fees and costs incurred in prosecuting its claims; and

7. Award such other relief as this Court deems proper.

|  |  |
|---|---|
| OF COUNSEL: | */s/ David M. Fry* |
| Jennifer Sklenar* | John W. Shaw (No. 3362) |
| Ryan M. Nishimoto | David M. Fry (No. 5486) |
| ARNOLD & PORTER KAYE SCHOLER LLP | Nathan R. Hoeschen (No. 6232) |
| 777 South Figueroa Street, 44th Floor | SHAW KELLER LLP |
| Los Angeles, CA 90017 | I.M. Pei Building |
| (213) 243-4000 | 1105 North Market Street, 12th Floor |
|  | Wilmington, DE 19801 |
|  | (302) 298-0700 |
|  | jshaw@shawkeller.com |
|  | dfry@shawkeller.com |
|  | nhoeschen@shawkeller.com |
|  | *Attorneys for Plaintiffs* |

Matthew M. Wolf
Bridgette Boyd
Anne Pearlman
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington D.C. 20001
(202) 942-5462

Jeffrey A. Miller
ARNOLD & PORTER KAYE SCHOLER LLP
3000 El Camino Real
Building 5, Suite 500
Palo Alto, CA 94306
(650) 319-4500

*Admitted in NY and CA only; practice limited to matters before federal courts and federal agencies

Dated: June 18, 2019

10